UNITED STATES COURT OF INTERNATIONAL TRADE

---

| | |
|---|---|
| RED CHAMBER CO., OCEAN BISTRO CORPORATION, TAMPA BAY FISHERIES, INC., (AKA TAMPA BAY FISHERIES), AQUA STAR USA CORP., (AKA AQUA STAR (USA), CORP.), <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; ROBERT E. LIGHTHIZER, U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION; MARK A. MORGAN, U.S. CUSTOMS & BORDER PROTECTION ACTING COMMISSIONER, <br><br> Defendant, | Ct. No.: 20-01188 |

---

**COMPLAINT**

On behalf of Red Chamber Co., Ocean Bistro Corporation, Tampa Bay Fisheries, Inc.,(aka Tampa Bay Fisheries), and Aqua Star USA Corp., (aka Aqua Star (USA) Corp.), importers of Chinese products subject to Section 301 duties, by and through the undersigned attorneys, hereby bring this civil action and allege the following:

1.  This action challenges the imposition of certain *ad valorem* tariffs on goods, from the People's Republic of China pursuant to Section 301 of the Trade Act of 1974.  19 U.S.C. § 2411. On August 18, 2017, the United States Trade Representative ("USTR") initiated an investigation pursuant to Section 301 of the Trade Act on whether Chinese intellectual property laws, practices, and actions, have restricted United States exports and otherwise discriminatorily affected United States' commerce.  Within 12 months after initiation, USTR determined to

1

impose import tariffs on goods from China pursuant to Section 301(b) of the Trade Act on two groupings of tariff codes, commonly referred to as "List 1" and "List 2." *See* 19 U.S.C. § 2414 (requiring USTR to take action, if any, within 12 months of initiation).

2.    On September 21, 2018, in consideration of China's threatened retaliatory measures, USTR published notification of the imposition of tariffs on additional tariff codes, commonly referred to as "List 3."  USTR subsequently implemented more tariffs on yet another additional group of tariff codes, referred to as "List 4."  Plaintiffs note that List 4 was divided into two groups, List 4A and List 4B, with different implementation dates.  Duties on List 4A were imposed, however, implementation of List 4B remains suspended at this time.

3.    Plaintiffs allege that Defendants' imposition and collection of duties on products covered by List 3 and List 4 are not authorized under the Act and violate the Administrative Procedure Act ("APA").  The Trade Act does not authorize USTR to impose additional tariffs not tied to the acts, policies or practices that are the subject of the investigation.  The implementation of List 3 and List 4 tariffs was also past the 12 months provided to act from the initiation of the investigation and not within the scope of modifying an initial USTR action. Moreover, USTR arbitrarily implemented the List 3 and List 4 tariffs in violation of various APA requirements.

**Parties**

4.    Plaintiffs are importers of various seafood products, other food products, packaging, etc., subject to duties under List 3 or 4A. The attached Exhibit lists the tariff numbers under which the Plaintiffs paid these duties.

5.    Defendant United States received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

6.   The United States Office of the United States Trade Representative ("USTR") is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President.  USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4.

7.   Defendant Ambassador Robert Lighthizer currently holds the position of USTR and serves as the director of the Office of the USTR. In these capacities, he made numerous decisions regarding List 3 and List 4.

8.   Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiffs to account for the tariffs imposed by USTR under List 3 and List 4.  Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiffs under List 3 and/or List 4.

## Standing

9.   Plaintiffs have paid duties as a result of tariffs illegally imposed pursuant to List 3 and/or List 4.  Plaintiffs have standing because each have been "adversely affected or aggrieved" by agency action within the meaning of the APA. 5 U.S.C. § 702; 28 U.S.C. § 2631(i).  Tariffs imposed by Defendants pursuant to List 3 and/or List 4A adversely affected and aggrieved Plaintiffs because each was required to pay and did pay these unlawful duties.

## Jurisdiction

10. The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of

the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of

merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

**Timeliness**

11.    An action under 28 U.S.C. § 1581(i) must be commenced within two years after the

cause of action first accrues. 28 U.S.C. § 2636(i).

12.    Plaintiffs contest action taken by Defendants that resulted in List 3 and List 4 and the

subsequent imposition of tariffs on Plaintiffs.  *Notice of Modification of Section 301 Action:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 83 Fed. Reg. 47,974 (September 21, 2018) (effective September 24, 2018).

Plaintiffs' claims accrued at the earliest on September 24, 2018, when tariffs were first levied on

goods on List 3 pursuant to the USTR's published determination.

13.    Therefore, the instant action was filed within two years of the date that Plaintiffs'

paid any List 3 or List 4A duties.

**Relevant Law**

14.    Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade

practices. 19 U.S.C. § 2411(b).  If the investigation reveals "an act, policy, or practice of a

foreign country is unreasonable or discriminatory and burdens or restricts United States

commerce," then USTR may take "appropriate" action, such as imposing tariffs, to obtain the

"elimination of that act, policy, or practice." 19 U.S.C. § 2411(b).

15.    Section 304 of the Trade Act requires USTR to determine what action to take, if any,

within 12 months after the initiation of the underlying investigation. 19 U.S.C. § 2414(a)(2)(B).

16.    Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or

terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or

restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id*. § 2417(a)(1)(B), (C).

## Relevant Facts

17.    On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology, 82 Fed. Reg. 39,007 (Aug. 17, 2017). According to the President, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id*.

18.    On August 18, 2017, USTR initiated the investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable" under Section 301 of the Trade Act.  *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (August 24, 2017).

19.    Seven months later, on March 22, 2018, USTR released a report announcing the results of its investigation.  Office Of The United States Trade Representative, *Findings of the*

*Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (March 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.  USTR concluded that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17.

20.    On March 22, 2018, USTR also published a Fact Sheet stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." Office Of The United States Trade Representative, *Section 301 Fact Sheet* (March 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet.  USTR indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.*; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (March 27, 2018).

21.    On June 20, 2018, USTR published *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018), imposing an addition 25% *ad valorem* duty on selected products of China.  This is commonly referred to as "List 1."  This covered 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id*. at 28,711.

22.   At the same time that it finalized List 1, USTR announced that it intended to impose a 25% *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation. *Id.* at 28,712. USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711-12.

23.   On August 16, 2018, USTR published *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018), imposing an additional 25% *ad valorem* duty on selected products of China covering 279 tariff subheadings and approximately 16 billion in trade value.  This is commonly referred to as "List 2."

24.   These actions, *i.e.* List 1 and List 2, occurred within the 12-month statutory deadline from the initiation of the investigation in August 18, 2017.  19 U.S.C. § 2414(a)(2)(B).  These actions were also specifically grounded on the USTR's investigation findings with the intent to address the U.S.'s harm from China' technology transfer and intellectual property practices.

25.   Shortly after President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China promptly threatened to impose retaliatory duties on the same value of imports from the United States. In response, President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." The White House, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trumpadditional-proposed-section-301-remedies/.

26.   After a series of statements from President Trump on pursuing tariffs in response to

China relation, on June 18, 2018, President Trump formally directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion—despite USTR having not yet implemented List 1 and List 2. President Trump acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision. The White House, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-tradechina-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

27.     Acknowledging the purpose of the President's directive, USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation. Office Of The United States Trade Representative, USTR Robert Lighthizer Statement on the President's Additional China Trade Action (June 18, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

28.     China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

29.    In explicit response to China's retaliation and without reference to China's technology transfer, intellectual property, or innovation policies, the USTR proposed to impose duties on additional Chinese-origin products. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,609 (July 17, 2018).  In the notice, USTR stated it was acting under Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id*. at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)).

30.    USTR imposition of these tariffs was based on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices").  USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.*; *see also id.* (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id; see also Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018),

available at https://ustr.gov/about-us/policy-offices/press-office/press-
releases/2018/july/statement-us-trade-representative.

31. Furthermore, public statements by the President indicated the additional duties were
tied to the trade imbalance between the United States and China.  @realDonaldTrump, Twitter
(July 10, 2018, 9:17 PM EDT),
https://twitter.com/realDonaldTrump/status/1005982266496094209; @realDonaldTrump,
Twitter (July 20, 2018, 8:43 AM EDT),
https://twitter.com/realDonaldTrump/status/1020287981020729344; @realDonaldTrump,
TWITTER (July 20, 2018, 8:51 AM EDT), https://twitter.com/realDonald
Trump/status/1020290163933630464; @realDonaldTrump, TWITTER (July 25, 2018, 7:20 AM
EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504; @realDonaldTrump,
Twitter (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074
252999225344.

32. Citing allegedly illegal retaliation against the United States rather than the practices
subject to the USTR 301 investigation, USTR announced that it would impose an additional 25%
ad valorem duty on selected products of China.  Office of The United States Trade
Representative, Statement by U.S. Trade Representative Robert Lighthizer on Section 301
Action (Aug. 1, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-
releases/2018/august/statement-us-trade-representative.

33. Subsequently, USTR, at the direction of President Trump, formally proposed "raising
the level of the additional duty in the proposed supplemental action from 10 percent to 25
percent." *Extension of Public Comment Period Concerning Proposed Modification of Action
Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018). USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

34.    USTR also adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both initial and rebuttal comments from the public. 83 Fed. Reg. at 38,761. That adjustment, deviating from its past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR also limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001.  Despite those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id*.

35.    A mere eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." The White House, Statement from the President (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statementfrom-the-president-4/. Once again, the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motived his decision, and he immediately promised to proceed with "phase three" of the plan—an additional $267 billion tariff action—"if China takes retaliatory action against our farmers or other industries." *Id*.

36.    Following the President's announcement, USTR published notice of the final list of products subject to an additional duty, a list commonly known as "List 3." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed, Reg, 47,974 (September 21, 2018) (duties effective September 24, 2018).  This publication was more than 12 months after the initiation of the investigation on August 24, 2017.  USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019. *Id.*  USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Id.*

37.    As legal support for its action, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id.* (brackets omitted).  USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.*  USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

38.    In the months that followed, China and the United States attempted to resolve their

differences through trade negotiations.  The trade negotiations ultimately fell apart. In May 2019,

USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May

10, 2019 or June 1, 2019, depending on the day of export. *See Notice of Modification of Section

301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual

Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*");

*see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices

Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892

(May 15, 2019). The notice cited China's decision to "retreat from specific commitments agreed

to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *List 3 Rate

Increase Notice*, 84 Fed. Reg. at 20,459*. Unlike with past imposition of new tariffs, USTR did

not seek public comment but rather simply announced that the increase would occur. *Id.*

39.    The duties imposed on products covered by List 3 remain in effect as of the date of

this Complaint, with the exception of a limited number of products for which USTR granted

exclusions from the duties. *See, e.g., Notice of Product Exclusion Extensions: China's Acts,

Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,

85 Fed. Reg. 48,600 (Aug. 11, 2020).

40.    On May 17, 2019, USTR announced its intention to proceed with the implementation

of Section 301 duties on additional products, commonly referred to as "List 4." List 4 would

impose an additional duty of 25% *ad valorem* on products worth $300 billion. *Request for

Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts,

Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,

84 Fed. Reg. 22,564, 22,564 (May 17, 2019).  USTR explained that its decision was motivated

by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and]

announce[ment of] further retaliatory action against U.S. commerce." *Id*.

41.   USTR invited the public to comment on proposed List 4 and participate in a hearing. *Id*. The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001.  Despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input: USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing. *Id.*

42.   On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*. @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/realDonaldTrump/status/1156979446877962243 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

43.   On August 20, 2019, USTR announced that it would implement List 4 in two phases, commonly called "List 4A" and "List 4B". *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).  Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id*.  This publication was also more than 12 months after the initiation of the investigation on August 24, 2017.

44.    As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id.* at 43,304. But instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

45.    On August 30, 2019, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id.*

46.    On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B. Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 69,447, 69,447 (December 18, 2019). USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, id., an

15

action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (January 22, 2020).

47.     The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint.  Although the proposed duties on products covered by List 4B remain suspended, they may be imposed if directed by President Trump.

<u>**COUNT I**</u>

<u>**DECLARATORY JUDGMENT - VIOLATION OF THE TRADE ACT**</u>

48.     The allegations of paragraphs 1 through 47 are restated and incorporated herein by reference.

49.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

50.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4 tariffs.

51.     Section 301 of the Trade Act authorizes USTR to impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b).  USTR failed to base the imposition of Section 301 duties on Chinese products covered by List 3 and List 4 on the acts or policies found in its report to "burden or restrict" U.S. commerce as required by 19 U.S.C. § 2411(b)(1).  Therefore, the levying of the tariffs under List 3 and List 4 are contrary to law.

52.    Further, when USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, more than a year after USTR initiated the Section 301 investigation on August 18, 2017. Likewise, USTR's action giving rise to List 4 occurred even later, well beyond the 12-month period from the initiation of the investigation. USTR failed to take action to impose duties on List 3 and List 4 products from China within the 12-month period required, therefore the levying of tariffs under List 3 and List 4 was contrary to law.

53.    Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B).  Section 307 of the Trade Act does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.  Defendants' implementation of List 3 and List 4 tariffs were related to China's retaliation and other reasons not based on USTR's 301 investigative finding into China's technology transfer and intellectual property policies.

54.    Moreover, Section 301 actions may be modified or terminated when no longer "appropriate." 19 U.S.C. § 2417(a)(1)(C).  This authorization does not permit USTR to increase an existing remedy action. Rather, it authorizes USTR to delay, reduce, or terminate such action.

55.    For each of these reasons independently and together, Defendants' imposition of tariffs in List 3 and List 4 tariffs was contrary to law.  Plaintiffs are therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4 are *ultra vires* and

contrary to law.

## COUNT II

## VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

1.     The allegations of paragraphs 1 through 55 are restated and incorporated herein by reference.

2.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

3.     Defendants exceeded their authority under the Trade Act in promulgating List 3 and List 4, and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

4.     Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

5.     Defendant also promulgated List 3 and List 4 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale.  Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3 and List 4.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment from the Court:

(1)   Declaring that Defendants' actions resulting in tariffs on products covered by List 3 and List 4A are unauthorized by, and contrary to, the Trade Act;

(2)   Declaring that Defendants arbitrarily and unlawfully promulgated List 3 and List 4 in violation of the APA;

(3)   Vacating the List 3 and List 4 rulemaking;

(4)   Ordering Defendants to refund, with interest as provided for by law, any duties paid by Plaintiffs pursuant to List 3 and List 4A;

(5)   Permanently enjoining Defendants from applying List 3 or List 4 against Plaintiffs and collecting any duties from Plaintiffs pursuant to List 3 or List 4A;

(6)   Awarding Plaintiffs its costs and reasonable attorney fees; and

(7)   Granting Plaintiffs such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ John J. Kenkel

John J. Kenkel
Alexandra H. Salzman*
J. Kevin Horgan
**DEKIEFFER & HORGAN, PLLC**
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  gmenegaz@dhlaw.com
Counsel to Plaintiffs

Dated:  September 18, 2020                * Member of California Bar

**EXHIBIT**

**LIST OF PRODUCTS AND TARIFF NUMBERS**

## LIST OF PRODUCTS AND TARIFF NUMBERS

### RED CHAMBER

| | |
|---|---|
| PLASTIC POUCHES | 3923210095 |
| PLASTIC BAGS | 3923210095 |
| WHITE MINCED ONION | 0712204000 |
| WHITE CHOPPED ONION | 0712204000 |
| FROZEN BREADED FARMED SHRIMP | 1605211020 |
| MASK GB 2626 | 6307909889 |
| PROTECTIVE MASK | 6307909889 |
| EMPTY POLYBAG | 3923210095 |
| SLIPPER | 6405902000 |
| MASK GB 2626-2006 | 6307909889 |
| EMPTY POLYBAG | 3923210095 |
| PROMOTIONAL COLOR BAGS | 4202921000 |
| DISPOSABLE MASK | 6307909889 |
| FACE SHIELD | 3926209050 |

### OCEAN BRISTO

| | |
|---|---|
| *FROZEN BLANCHED FARMED SHRIMP* | *1605211030* |
| FROZEN BREADED SHRIMP | 1605211020 |
| FROZEN COOKED PEELED AND DEVEINED FARMED SHRIMP | 1605211030 |
| FROZEN COOKED SHRIMP | 1605211030 |
| FROZEN DUSTED BUTTERFLIED SHRIMP | 1605211030 |
| FROZEN DUSTED FARMED SHRIMP | 1605211030 |
| FROZEN IMITATION CRAB | 1604202000 |
| FROZEN IMITATION CRAB FLAKES | 1604202000 |
| FROZEN IMITATION CRABFROZEN IMITATION CRAB FLAKES | 1604202000 |

| | |
|---|---|
| FROZEN LOLIGO SQUID RING | 0307490129 |
| FROZEN POLLACK PORTIONS | 0304791010 |
| FROZEN RAW FARMED SHRIMP IN SKEWER | 0306170018 |
| FROZEN RAW PEELED & DEVEINED FARMED SHRIMP IN SKEWER | 0306170015 |
| FROZEN RAW PEELED & DEVEINED FARMED SHRIMP IN SKEWER26-30 | 0306170015 |
| FROZEN RAW PEELED & DEVEINED FARMED SHRIMP IN SKEWER36-40 | 0306170015 |
| FROZEN RAW PEELED & DEVEINED TAIL ON WILD SHRIMP | 0306170040 |
| FROZEN RAW PEELED & DEVEINED WILD SHRIMP | 0306170040 |
| FROZEN RAW PEELED & DEVEINED WILD SHRIMP IN SKEWER31-40 | 0306170015 |
| FROZEN RAW PEELED AND DEVEINED FARMED SHRIMP | 0306170040 |
| FROZEN RAW PEELED AND DEVEINED TAIL ON FARMED SHRIMP | 0306170040 |
| FROZEN RAW PEELED SHRIMP- FARMED | 0306170040 |
| FROZEN SALTED SHRIMP  WILD | 0306950020 |
| FROZEN SALTED SHRIMP  WILD SHELL ON | 0306950020 |
| FROZEN SALTED WILD SHRIMP | 0306950020 |
| FROZEN SCALLOP | 0307290100 |
| FROZEN SQUID | 0307490150 |
| FROZEN SQUID RINGS & TENTACLES | 0307490150 |
| FROZEN TILAPIA FILLETS | 0304610000 |
| FROZEN WILD BLANCHED SHRIMP | 1605211030 |
| GREEN BEAN STARCH SHEET | 1901909195 |
| PLASTIC BAGS | 3923290000 |
| SINGLE-USE DISPOSABLE PROTECTIVE MASK | 6307909870 |

**TAMPA BAY**

| BREADED SHRIMP AND PRAWNS | 1605.21.1020 |
|---|---|
| FROZEN FILLET TILAPIA | 0304.61-0000 |

**AQUA STAR**

| ASSORTED | 0307430050, 0307490129 | | |
|---|---|---|---|
| CRAB | 0306144009, 4819200040, 1605102022, 0304725000, 3923290000 | | |
| FISH | 0304610000, 0304620010, 0304895091, 0304895040, 0304835015, 1604114050 | | |
| SHRIMP | 1605211030, 0306170040, 0306170006 | | |
| VALUE ADDED | 1605211020, 1605546030, 0307490150, 1605546020 | | |